UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CIVIL CASE NO.: **09-CV-60746-Cohn-Seltzer**

CHRISTOPHER WALKER, MD,

       Plaintiff,

vs.

HALLMARK BANK & TRUST LTD.,
BRIAN TROWBRIDGE, MASTERCARD
WORLDWIDE, MASTERCARD
INTERNATIONAL, LLC, DAVID SMITH,
WAYNE SMITH, OVERSEAS LOCKET
INTERNATIONAL CORPORATION, THE
TURKS AND CAICOS ISLAND
INVESTMENT AGENCY, MICHAEL
MISICK,

       Defendants.

_____/

FILED by **_VT_** D.C.
ELECTRONIC

**May 20, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## DEFENDANT MASTERCARD INTERNATIONAL, LLC'S NOTICE OF REMOVAL

Defendant MasterCard International, LLC ("MasterCard"), hereby gives notice of the removal of this civil action from the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, and states:

1.     MasterCard is a defendant in a civil action initiated by the filing of a Complaint on or about March 30, 2009, in the Circuit Court of the Seventeenth Judical Circuit, in and for Broward County, Florida, and styled *Christopher Walker, MD v. Hallmark Bank & Trust Ltd. et al.*, Case Number CACE 09018377 (the "State Court Action").

2.     Besides MasterCard, the Complaint identifies the defendants in the State Court Action as Hallmark Bank & Trust Ltd. ("Hallmark"); Overseas Locket International Corporation

("OLINT"); The Turks and Caicos Islands Investment Agency ("TCII"); Brian Trowbridge ("Trowbridge"); David Smith ("D. Smith"); Michael Misick ("Misick"); and MasterCard Worldwide ("MasterCard Worldwide").

3.     The Complaint appears to attempt to allege a fraudulent investment scheme operated by certain Defendants out of the Turks and Caicos Islands.

4.     MasterCard first received notice of the State Court Action on May 8, 2009, when a copy of the Complaint was served on MasterCard's Florida registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.   This removal is timely pursuant to 28 U.S.C. § 1446(b) because this Notice of Removal is being filed within thirty days after the receipt by MasterCard of a copy of the initial pleading setting forth the claim for relief upon which this action is based.

5.     A true and correct copy of the Complaint and other items in the file of the State Court Action as of today are attached hereto as Exhibit A.[1]

6.     This Court has original jurisdiction over this action based on the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because, as noted below, neither MasterCard nor any other Defendant is a citizen of Florida and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Plaintiff Christopher Walker, MD, is a citizen of Florida and of Jamaica (see Compl. ¶ 1).

8.     Defendant MasterCard is a citizen of Delaware and Missouri because it is a Delaware limited liability company with its principal place of business in O'Fallon, Missouri.[2]

---

[1]     The State Court Action's docket sheet also reflects the issuance of five summonses, but no copies of the summonses were in the file as of today.

9.      Defendant Hallmark is a foreign citizen and is based in the Turks and Caicos Islands (*see* Compl. ¶ 2).

10.     Defendant OLINT is a foreign corporation organized under the laws of Jamaica, and operates out of the Turks and Caicos Islands (*see* Compl. ¶ 7).

11.     Defendant TCII is a foreign agency located in the Turks and Caicos Islands (*see* Compl. ¶ 8).

12.     Defendant Trowbridge is a foreign citizen (*see* Compl. ¶ 3).

13.     Defendant D. Smith is a foreign citizen (*see* Compl. ¶ 6).[3]

14.     Defendant Misick is a foreign citizen (*see* Compl. ¶ 9).

15.     Finally, the Complaint identifies "MasterCard Worldwide" as a defendant. However, no such entity exists. Instead, the name "MasterCard Worldwide" is a name under which MasterCard International Incorporated (not Defendant MasterCard International, LLC) does business. Although MasterCard International Incorporated is not named as a defendant in this action, its presence in this suit would not affect the Court's diversity jurisdiction because MasterCard International Incorporated is a citizen of Delaware and of New York as it is a Delaware membership corporation with its principal place of business in Purchase, New York.

16.     The amount in controversy exceeds $75,000, exclusive of interest and costs, as the Complaint alleges that Plaintiff "has suffered losses of approximately $2.4 million due to the

---

[2]     The Complaint incorrectly identifies MasterCard as a Florida limited liability company (*see* Compl. ¶ 5). The records of the Florida Secretary of State confirm that it is a Delaware limited liability company (and not a Florida limited liability company) with its principal place of business in O'Fallon, Missouri (records available at www.sunbiz.org).

[3]     Although the caption of the Complaint also identifies Wayne Smith as a defendant (who is alleged to be Defendant D. Smith's brother), Wayne Smith is not identified as a defendant anywhere in the body of the Complaint. However, even if he was a defendant, the Court's diversity jurisdiction would not be affected because he is identified as a foreign citizen in the caption and appears to reside in Jamaica (*see* Compl. at 1 & ¶ 7).

misconduct of Defendants" (Compl. ¶ 49; *see also* Compl. ¶ 97 ("Defendants breached the Agreement by failing to return the requested principle [sic] and profits, totaling $2.4 million, owed to Plaintiff."), ¶ 101 ("Plaintiff has conferred upon Defendants a substantial benefit in the form of monies intended to be invested . . . , in an amount in excess of $2 million.")).

17.     Based on the information available to undersigned counsel, only Defendant MasterCard has been served with process in connection with the State Court Action. Accordingly, at this time removal of this action does not require the joinder or consent of any other Defendant.[4]  *See Lazo v. U.S. Airways, Inc.*, 2008 WL 3926430 at *2 (S.D. Fla. 2008) (citing *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999)).

18.     Venue properly rests in the Southern District of Florida, Fort Lauderdale Division, because the State Court Action is pending in Broward County, which is within this Court's geographic area of jurisdiction.  *See* 28 U.S.C. § 89(c).  Accordingly, this Notice of Removal is appropriately filed in this Court pursuant to 28 U.S.C. § 1441(a).

19.     Pursuant to 28 U.S.C. § 1446(d), written notice of this Notice of Removal will be provided to Plaintiff and a copy will be filed promptly with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

WHEREFORE, Defendant MasterCard International, LLC, respectfully requests that the Court assume full jurisdiction over the State Court Action.

---

[4]     To the extent MasterCard International Incorporated is deemed a defendant in this case based on the Complaint's identification of MasterCard Worldwide as a defendant – which it should not be – and MasterCard International Incorporated is deemed to have been served with process based on service upon MasterCard – which it should not be – then MasterCard International Incorporated consents to removal of the State Court Action to this Court.

Dated:    May 20, 2009          Respectfully submitted:
          Ft. Lauderdale, FL

_____
Michael S. Lamont, FBN 0527122
mlamont@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
1200 E. Las Olas Blvd.
Suite 400
Fort Lauderdale, FL 33301
T: (954) 703-3900
F: (954) 703-3939
Attorneys for Defendant MasterCard
International, LLC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile and U.S. Mail to counsel for Plaintiff, David P. Rowe, Esq., Law Office of David P. Rowe, 110 E. Broward Blvd., Suite 1700, Fort Lauderdale, FL 33301, fax number (954) 323-8628, on May 20, 2009.

_____
Michael S. Lamont, FBN: 0527122

5

# EXHIBIT A

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075.

## I. CASE STYLE

(Name of Court) Circuit Court

Plaintiff          Case #: _____ **09018377**

Christopher Walker

_____ Judge: _____

**14**

vs.

Defendant**s** _____

Hallmark, MasterCard V, Mastercard, W.Smith, D.Smith Pleasant, J wks and Missick.

## II. TYPE OF CASE

(Place an x in one box only. If the case fits more than one type of case, select the most definitive.)

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ☐ Simplified dissolution | ☐ Professional malpractice | ☐ Contracts |
| ☐ Dissolution | ☐ Products liability | ☐ Condominium |
| ☐ Support – IV-D | ☐ Auto negligence | ☐ Real property/ Mortgage foreclosure |
| ☐ Support – Non IV-D | ☐ Other negligence | ☐ Eminent domain |
| ☐ URESA – IV-D | | ☒ Other |
| ☐ Domestic violence | | |
| ☐ Other domestic relations | | |

## III. Is Jury Trial Demanded in Complaint?

☒ Yes

☐ No

DATE _____          SIGNATURE OF ATTORNEY

FOR PARTY INITIATING ACTION



IN THE CIRCUIT COURT OF THE 17th

JUDICIAL CIRCUIT IN AND FOR

BROWARD COUNTY, FLORIDA

CIVIL DIVISON

**0 9 0 1 8 3 7 7**

CASE NO.:

**14**

CHRISTOPHER WALKER, MD,

       Plaintiff

vs.

HALLMARK BANK & TRUST LTD., a foreign corporation, BRIAN TROWBRIDGE, a foreign citizen, MASTERCARD WORLDWIDE, a New York corporation, MASTERCARD INTERNATIONAL, LLC, a Florida Corporation, DAVID SMITH, a foreign citizen, WAYNE SMITH, a foreign citizen, OVERSEAS LOCKET INTERNATIONAL CORPORATION, a foreign corporation, THE TURKS AND CAICOS ISLANDS INVESTMENT AGENCY, a foreign corporation, and MICHAEL MISICK, a foreign citizen

       Defendants

_____/

## COMPLAINT

    Plaintiff, Christopher Walker, MD, (hereinafter "Plaintiff"), by and through undersigned counsel, files this, his Complaint against Defendants, HALLMARK BANK & TRUST LTD. (hereinafter "HALLMARK"), BRIAN TROWBRIDGE (hereinafter "TROWBRIDGE"), MASTERCARD WORLDWIDE and MASTERCARD INTERNATIONAL LLC (together "MASTERCARD"), DAVID SMITH (hereinafter "SMITH"), OVERSEAS LOCKET INTERNATIONAL CORPORATION (hereinafter "OLINT"), THE TURKS AND CAICOS ISLANDS INVESTMENT AGENCY (hereinafter "TCII"), and MICHAEL MISICK (hereinafter "Misick")  (collectively referred to as "Defendants"), and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Christopher Walker, MD, a citizen of the United States and of Jamaica, currently resides and

CASH
D's = 9
S1S = 1

practices medicine in Orlando, Florida.

2. Defendant, Hallmark Bank & Trust, LTD., a foreign corporation based in the Turks & Caicos and, based upon information and belief, has significant business contacts with the state of Florida as explained in greater detail below.

3. Defendant, Brian Trowbridge, a foreign citizen, is a principal of HALLMARK and, based upon information and belief, has significant business contacts with the state of Florida as explained in greater detail below.

4. Defendant, MasterCard Worldwide, is a New York corporation, maintains a wholly owned Florida Limited Liability Corporation and a Florida registered agent based in Broward County, Florida, as well as has significant business contacts with the state of Florida

5. Defendant, MasterCard International LLC, is a Florida Limited Liability Corporation owned by MasterCard Worldwide, maintains an address in Broward County, Florida for service of process purposes.

6. Defendant, David Smith, a foreign citizen, is the principal of OLINT and a partial owner and principal of HALLMARK, and, based upon information and belief, has significant business contacts with the state of Florida as explained in greater detail below.

7. Defendant, OLINT, is a foreign corporation organized under the laws of Jamaica, and operating out of the Turks & Caicos and, based upon information and belief, Florida. The Jamaican operations of OLINT, based upon information and belief, were being run by Wayne Smith, David Smith's brother.

8. Defendant, TCII, is a foreign agency located in the Turks and Caicos which encourages foreign investment in the Turks & Caicos islands.

9. Defendant, MISICK, is a citizen of the Turks and Caicos, and until his recent resignation, was the Premier of the Turks and Caicos Islands.

10. This is an action seeking damages in excess of $15,000.

11. This court has jurisdiction over Defendant HALLMARK, because, based upon information and belief, they have committed a tort, in whole or in part, have sent written materials and card products to residents of Broward County, or have otherwise transacted business in the State of Florida and Broward County.

12. This court has jurisdiction over Defendant, TROWBRIDGE, because, upon information and belief, said Defendant as principal for HALLMARK was responsible for sending materials and card products to Broward County, Florida, and has committed a tort, in whole or in part, or has otherwise transacted business in the State of Florida as described in greater detail below.

13. This court has jurisdiction over Defendants MASTERCARD, as, upon information and belief, said Defendants were transact significant business with residents of Broward County, send mail to and receive mailed applications from Broward County, and send card products to residents of Broward County, and said Defendants have committed a tort, in whole or in part, or have otherwise transacted business in the State of Florida as described in greater detail below.

14. This court has jurisdiction over Defendant, SMITH, because, upon information and belief, said Defendant was operating a business of foreign currency trading, based upon information and belief, at least in part, from Orlando, Florida, and said Defendant has committed a tort, in whole or in part, or has otherwise transacted business in the State of Florida as described in greater detail below.

15. This court has jurisdiction over Defendant, OLINT, as, upon information and belief, said Defendant was operating a business of foreign currency trading in Orlando, Florida, and said Defendant has committed a tort, in whole or in part, or has otherwise transacted business in the State of Florida as described in greater detail below.

16. Venue is proper in this district as one or more of the individual defendant entities owns maintains a location for service of process in Broward County as well as they all transact significant business

within the County.

17. All conditions precedent to the filing of this action have occurred, been performed, been waived or are otherwise excused.

## GENERAL ALLEGATIONS

18. Defendant, OLINT, and OLINT'S principal, Defendant SMITH, invest in foreign currency exchange trading through various trading platforms (called "FOREX"). Although OLINT was a Jamaican corporation, OLINT operated their FOREX trading mainly in the Turks & Caicos. In Jamaica, OLINT's business operations were being run by another principal, Wayne Smith, David's brother. As early as 2006, OLINT had announced that it would transfer part of its FOREX trading business to Orlando, Florida.[1]

19. Defendant HALLMARK is a banking institution operating out of the Turks & Caicos. HALLMARK offers MasterCard card products and conspicuously displays the MasterCard logo[2], and proudly proclaims their alliance with MasterCard.

20. Defendant TROWBRIDGE is an attorney operating out of the Turks & Caicos and also serves as Director, CEO and Chairman of HALLMARK.[3]

21. HALLMARK and OLINT signed an operating agreement whereby HALLMARK agreed to operate as a conduit to funnel money from investors into an "investment club," in this case OLINT. Essentially investors [including Plaintiff] would remit funds to HALLMARK at which time HALLMARK would remit the funds to OLINT. [See OPERATING AGREEMENT. Attached hereto as "Exhibit A."]

22. HALLMARK, and/or their principals and agents, traveled to Jamaica to recruit investors for this scheme, and co-signed multiple account agreements with investors while in Jamaica.

23. TROWBRIDGE was paid over $300,000 for his dealings with OLINT and SMITH and was unjustly enriched[4].

24. Due to the aggressive advertising of the high rate of returns that Defendants OLINT and SMITH engaged in, Plaintiff decided to invest in OLINT on or around September of 2007. At this time principles or agents of OLINT proposed that Plaintiff invest with assurances that he could have access to his money at any time through OLINT's online accounting website (the "website").

25. Plaintiff was also encouraged to invest because Defendants MASTERCARD endorsed Defendant HALLMARK'S business by partnering with them to offer card products. MASTERCARD'S reputation created a situation that made HALLMARK appear to be a strong and legitimate banking institution, which further induced multiple investors, including Plaintiff, to feel more secure about investing with OLINT.

26. Defendants MASTERCARD were a third-party beneficiary to HALLMARK'S involvement with OLINT and SMITH's fraudulent activities.

27. Defendants MASTERCARD are still affiliated with HALLMARK despite their business practices and HALLMARK is still using the MASTERCARD name and reputation to gain clients.

28. Defendant TCII is an independent governmental agency that is mandated to attract offshore investment to the Turks and Caicos islands. Conrad C. Higgs was the CEO of TCII.[5] TCII encouraged investors, some based in Florida, to invest in companies located in, and within the islands of the Turks and Caicos. In addition, TCII did nothing to discourage investors from investing in OLINT and HALLMARK before or after their fraudulent behavior and business practices came to light.

29. Defendant MISICK was the first Premier of the Turks and Caicos. Defendant MISICK, by virtue of his political position was also the Minister for the Commerce and Development and The Turks and

Caicos Island Investment agency. As Minister to TCII, and in other capacities, MISICK encouraged investors, some based in Florida, to invest in companies located in, and within the islands of the Turks and Caicos. In addition, MISICK did nothing to discourage investors from investing in OLINT and HALLMARK before or after their fraudulent behavior and business practices came to light.

30. The governor of the Turks and Caicos, upon suspicion of corruption within the government, requested a Commission of Inquiry be dispatched from London, with The Right Honorable Sir Robin Auld serving as the Commissioner of Inquiry. Sir Auld was tasked with investigating the corruption charges, levied at MISICK himself, members of his immediate and extended family, among others.

31. Sir Robin Auld's report suggested that there was "systemic" corruption within the government of the Turks & Caicos and suggested that the Constitution of the Turks and Caicos be partially suspended, with governmental duties being handled by the British.

32. Upon the release of the report, MISICK resigned his political position.[6]

33. Plaintiff signed an agreement with Defendant OLINT, the terms of same would govern Plaintiff's account with OLINT. This agreement was co-signed by OLINT [SMITH was the actual signatory, being principal of OLINT] and HALLMARK. OLINT and HALLMARK are equally liable for damages to Plaintiff.

34. During 2007, Plaintiff entered into an agreement with representatives from OLINT and HALLMARK and was provided a terms that apply to the account (the "Agreement") with OLINT to open an account whereby OLINT was to invest Plaintiff's funds in foreign currency exchange trading. Based upon the Agreement and other representations made by Defendants and their principals, including Defendant SMITH, Plaintiff was to receive a significant return on his respective investment. OLINT and HALLMARK are both liable for damages to Plaintiff.

35. Plaintiff was promised that he would be able to access his account information through OLINT'S interactive website, including access for deposits, withdrawals, and the general monitoring of the account as more fully described below.

36. Plaintiff made multiple deposits to his account at OLINT and was continually promised full access to his money, including the ability to withdrawal it fully, if he so desired.

37. Beginning in early 2008, Plaintiff repeatedly made written and oral requests for the withdrawal of Plaintiff's funds, to Defendant OLINT, and several principles and employees of same, in accordance with the terms of Plaintiff's Agreement.

38. Notwithstanding such demands by Plaintiff, OLINT, has failed to respond to Plaintiff's requests for the withdrawal of the Plaintiff's funds, in breach of the Agreement.

39. Upon information and belief, OLINT and SMITH sent multiple wire transfers to the United States in order to evade the Jamaican and Turks & Caicos authorities that were investigating OLINT and SMITH'S business practices.

40. Also upon information and belief, multiple wire transfers totaling roughly $100 million from OLINT and/or SMITH were sent to the United States, and based upon information and belief, HALLMARK was involved in wire transfers to and from OLINT and SMITH.

41. Plaintiff never authorized the transfer of his funds from his account at OLINT to any other person or business entity. The money wire transfer to MARTINEZ was done without knowledge or permission from Plaintiff.

42. Based upon information and belief, principals from OLINT and HALLMARK, including but not limited to, SMITH and TROWBRIDGE conspired to defraud investors, including Plaintiff and HALLMARK and TROWBRIDGE were instrumental in laundering money for OLINT and SMITH.

43. Defendants have refused the repeated requests to return Plaintiff's money.

44. Upon information and belief, OLINT'S principals have fled Jamaica avoid the Jamaican authorities and have absconded with Plaintiff's funds and deposited and/or invested them into several entities,

with the intent to hinder, delay, or defraud Plaintiff's efforts to recover his funds with the assistance of HALLMARK and TROWBRIDGE.

45. Defendant SMITH has been arrested, in the Turks & Caicos, for his involvement in OLINT'S fraudulent activities and charged with fraud. [7]

46. By this action, Plaintiff, is seeking to recover the principle and profit of his account with OLINT. According to the terms of the Agreement, OLINT was to use Plaintiff's funds for foreign currency exchange trading. HALLMARK and TROWBRIDGE are equally responsible for the mis-dealings of OLINT and SMITH because they co-signed Plaintiff's Agreement. However, due to Defendant's fraudulent misconduct, Plaintiff has lost access to his funds and/or has completely lost his funds, and as a result has suffered substantial damages.

47. Plaintiff is also seeking damages for OLINT and HALLMARK'S breach of the Agreement by failing to honor requests made by Plaintiff for the withdrawal of his funds, depriving Plaintiff of his property for an indefinite period of time, which resulted in OLINT, HALLMARK, and their principals (including Defendants SMITH and TROWBRIDGE) being unjustly enriched.

48. Plaintiff has had to hire the undersigned attorney, as well as counsel in Jamaica and England in an attempt to recover his funds, and has had to pay attorney's fees for same.

49. Plaintiff has suffered losses of approximately $2.4 million due to the misconduct of Defendants.

## COUNT I

## CIVIL RICO PREDICATED UPON MONEY LAUNDERING PURSUANT

## TO CHAPTER 896 OF THE FLORIDA STATUTES

50. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51. This is an action for civil RICO predicated money laundering against all Defendant's pursuant to Chapter 896 of the Florida Statutes.

52. Defendants intentionally participated in this scheme to defraud Plaintiff of both money and property.

53. Defendants carried out the scheme by means of material misrepresentations regarding OLINT, and the aforementioned returns on Plaintiff's investment, Plaintiff's access to principal and profit, and other such benefits from 2007, and continuing through the present time, both orally and through various documents, through the Website, and through emails from OLINT.

54. Defendants through their principals and agents, including Defendants TROWBRIDGE and SMITH, used both the United States mail and United States wires to effectuate the scheme. Beginning in or about early 2007, Defendants used the mail to send OLINT related information, to obtain monies from Plaintiff, and to aid in the inducement of additional investment in OLINT. In addition, Defendants, through their principals, including Defendants TROWBRIDGE and SMITH, made extensive use of the United States wires in connection with the scheme in several ways, including but not limited to: telephonic conversations with Plaintiff, in which misrepresentations were made, the use and transferring of funds paid by Plaintiff, and the misrepresentations made through the website and emails of OLINT, as part of Defendant's continued scheme to defraud.

55. Defendants TCII and MISICK were aware [or became aware] of OLINT'S, SMITH'S, and/or HALLMARK'S activities and business practices and did nothing to discourage investors from investing in the scheme. In fact, they continued to encourage investment in same.

56. Defendants committed a number of overt acts that constitute sufficient racketeering activity in furtherance of the conspiracy including but not limited to:

a. Making misrepresentations through their agents both verbally and through materials provided to Plaintiff including misstatements as to the accessibility of his investment, its purpose, and return thereon, as follows:

I. Defendants, and their agents, falsely represented and warranted that Plaintiff would have continued access to his investments via OLINT'S online portal, which would allow Plaintiff to monitor, adjust, and withdrawal his investments immediately;

II. Defendants, and their agents, falsely represented and warranted that Plaintiff's investment would be used for foreign currency exchange trading. Upon information and belief, Defendant OLINT'S principals, including Defendant SMITH, have absconded with Plaintiff's funds and/or transferred them into affiliated entities or to affiliated parties, including HALLMARK, among others, for personal gain and/or with the intent to hinder, delay, or defraud Plaintiff's efforts to recover his funds;

III. Defendants, and their agents, falsely represented and warranted that Plaintiff would receive a significant return on his investment. However, Defendant OLINT, never intended to return Plaintiff's funds and has created an elaborate suspension of operations to avoid same and delay/escape suspicion of their actions. Based upon information and belief, HALLMARK assisted OLINT in laundering and/or transferring money from OLINT after they were made aware of OLINT'S true business practices.

b. causing Plaintiff to enter into an agreement and requiring Plaintiff to provide Defendants with large sums of money to invest in OLINT by way of HALLMARK;

c. beginning in the beginning of 2008, denying Plaintiff access to his funds and/or accounts and records through the actions of Defendants, and/or their principals or agents;

d. through the actions of Defendants, and/or their principals or agents, misrepresenting to Plaintiff the status of OLINT and/or his investments in same to prevent him from discovering the fraud; and

e. acting in concert with one another to continue the concealment of their fraudulent conduct.

57. Defendants have derived income, and continue to derive income, from their racketeering activities as described above, especially in light of the tremendous sum of money that was transferred to the United States through HALLMARK.

58. Plaintiff reasonably relied on Defendant's misrepresentations, which contained false representations and warranties that reasonably induced Plaintiff to "invest" in OLINT.

59. As a consequence of Plaintiff's reasonable reliance, Plaintiff has suffered, and continues to suffer, injuries and damages.

60. Plaintiff has retained undersigned counsel and is obligated to pay his attorney a reasonable fee.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants, awarding Plaintiff damages, including but not limited to, treble damages, together with interest, reasonable attorney's fees and costs and any other such remedy as this Court deems necessary.

## COUNT II

# CIVIL RICO PREDICATED UPON MAIL AND WIRE FRAUD

## PURSUANT TO CHAPTER 895 OF THE FLORIDA STATUTES

61. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

62. This is an action for civil RICO predicated upon mail and wire fraud against all Defendant's pursuant to Chapter 895 of the Florida Statutes.

63. Defendants intentionally participated in this scheme to defraud Plaintiff of both money and property.

64. Defendants carried out the scheme by means of material misrepresentations regarding OLINT, and the aforementioned returns on Plaintiff's investment, Plaintiff's access to principal and profit, and other such benefits from 2007, and continuing through the present time, both orally and through various documents, through the Website, and through emails from OLINT.

65. Defendants through their principals and agents, including Defendants TROWBRIDGE and SMITH, used both the United States mail and United States wires to effectuate the scheme. Beginning in or about early 2007, Defendants used the mail to send OLINT related information, to obtain monies from Plaintiff, and to aid in the inducement of additional investment in OLINT. In addition, Defendants, through their principals, including Defendants TROWBRIDGE and SMITH, made extensive use of the United States wires in connection with the scheme in several ways, including but not limited to: telephonic conversations with Plaintiff, in which misrepresentations were made, the use and transferring of funds paid by Plaintiff, and the misrepresentations made through the website and emails of OLINT, as part of Defendant's continued scheme to defraud.

66. Defendants TCII and MISICK were aware [or became aware] of OLINT'S, SMITH'S, and/or HALLMARK'S activities and business practices and did nothing to discourage investors from investing in the scheme. In fact, they continued to encourage investment in same.

67. Defendants committed a number of overt acts that constitute sufficient racketeering activity in furtherance of the conspiracy including but not limited to:

a. Making misrepresentations through their agents both verbally and through materials provided to Plaintiff including misstatements as to the accessibility of his investment, its purpose, and return thereon, as follows:

I. Defendants, and their agents, falsely represented and warranted that Plaintiff would have continued access to his investments via OLINT'S online portal, which would allow Plaintiff to monitor, adjust, and withdrawal his investments immediately;

II. Defendants, and their agents, falsely represented and warranted that Plaintiff's investment would be used for foreign currency exchange trading. Upon information and belief, Defendant OLINT'S principals, including Defendant SMITH, have absconded with Plaintiff's funds and/or transferred them into affiliated entities or to affiliated parties, including Defendant HALLMARK, among others, for personal gain and/or with the intent to hinder, delay, or defraud Plaintiff's efforts to recover his funds; and

III. Defendants, and their agents, falsely represented and warranted that Plaintiff would receive a significant return on his investment. However, Defendant OLINT, never intended to return Plaintiff's funds and has created an elaborate suspension of operations to avoid same and delay/escape suspicion of their actions.

    b. causing Plaintiff to enter into an agreement and requiring Plaintiff to provide Defendants with large sums of money to invest in OLINT through HALLMARK;

       c. beginning in the beginning of 2008, denying Plaintiff access to his funds and/or accounts and records through the actions of Defendants, and/or their principals or agents;

       d. through the actions of Defendants, and/or their principals or agents, misrepresenting to Plaintiff the status of OLINT and/or his investments in same to prevent his from discovering the fraud; and

       e. acting in concert with one another to continue the concealment of their fraudulent conduct.

68. Defendants have derived income, and continue to derive income, from their racketeering activities as described above, especially in light of the tremendous sum of money that was transferred to the United States through HALLMARK.

69. Plaintiff reasonably relied on Defendant's misrepresentations, which contained false representations and warranties that reasonably induced Plaintiff to "invest" in OLINT.

70. As a consequence of Plaintiff's reasonable reliance, Plaintiff has suffered, and continues to suffer, injuries and damages.

71. Plaintiff has retained undersigned counsel and is obligated to pay his attorney a reasonable fee. Pursuant to Chapter 895 of the Florida Statutes, Plaintiff is entitled to recover his attorney's fees from Defendants in this action.


    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants, awarding Plaintiff damages, including but not limited to, treble damages, together with interest, reasonable attorney's fees and costs and any other such remedy as this Court deems necessary.

## COUNT III

## FRAUDULENT CONVEYANCE

72. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

73. This is an action for fraudulent conveyance pursuant to Chapter 726 of the Florida Statutes.

74. Defendant OLINT, and their agents and principals, including Defendant SMITH, knowingly made misrepresentations of material fact that induced Plaintiff to remit funds to OLINT for the Defendant's financial gain. These misrepresentations include, but are not limited to:

       a. Making misrepresentations through their agents both verbally and through materials provided to Plaintiff including misstatements as to the accessibility of his investment, its purpose, and return thereon, as follows:

       I. Defendants, and their agents, falsely represented and warranted that Plaintiff would have continued access to his investments via OLINT'S online portal, which would allow Plaintiff to monitor, adjust, and withdrawal his investments immediately;

       II. Defendants, and their agents, falsely represented and warranted that Plaintiff's investment would be used for foreign currency exchange trading. Upon information and belief, Defendant

OLINT'S principals, including Defendant SMITH, have absconded with Plaintiff's funds and/or transferred them into affiliated entities or to affiliated parties, including Defendants HALLMARK, among others, for personal gain and/or with the intent to hinder, delay, or defraud Plaintiff's efforts to recover his funds; and

III. Defendants, and their agents, falsely represented and warranted that Plaintiff would receive a significant return on his investment. However, Defendant OLINT, never intended to return Plaintiff's funds and has created an elaborate suspension of operations to avoid same and delay/escape suspicion of their actions.

b. causing Plaintiff to enter into an agreement and requiring Plaintiff to provide Defendants with large sums of money to invest in OLINT and HALLMARK;

c. beginning in the beginning of 2008, denying Plaintiff access to his funds and/or accounts and records through the actions of Defendants, and/or their principals or agents;

d. through the actions of Defendants, and/or their principals or agents, misrepresenting to Plaintiff the status of OLINT and/or his investments in same to prevent his from discovering the fraud; and

e. acting in concert with one another to continue the concealment of their fraudulent conduct.

75.

Defendant OLINT, and/or their principals or authorized agents, made the statements described above, on an ongoing basis, with the intent to hinder, delay, and/or defraud Plaintiff of his investment, for reasons including, but not limited to, the following:

a. upon information and belief, the transfer of assets went to Florida, because the assets went from OLINT, through its principals, including Defendant SMITH, to individual Defendants directly and/or into affiliated entities of OLINT at least partially through HALLMARK.

b. upon information and belief, after the transfer, Defendants retained control of the assets because the assets were transferred to individual defendants directly and/or into affiliated entities of OLINT;

c. upon information and belief, the transfer of assets was concealed as Plaintiff was never informed of said transfer;

d. upon information and belief, prior to the transfer, OLINT has pending lawsuits and/or the threat of future lawsuits;

e. upon information and belief, Plaintiff's funds have been absconded with, and transferred into affiliated entities or to affiliated parties for personal gain

76. Moreover, upon information and belief, despite its obligation to Plaintiff, Defendants transferred assets from OLINT and HALLMARK to those affiliated entities described above for no consideration, or without receiving reasonably equivalent value.

77. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and continues to suffer, injuries and damages.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants awarding Plaintiff damages, together with interest, costs and such further relief as this Court deems necessary, just and proper.

**COUNT IV**

**CIVIL CONSPIRACY**

78. Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 49 as though fully set forth herein.

79. This is an action for civil conspiracy against all Defendants.

80. Defendants conspired with each other to defraud Plaintiff of monies intended to be invested for foreign currency exchange trading in OLINT.

81. Defendants committed a number of overt acts in furtherance of the conspiracy including, but not limited to:

    a. Making misrepresentations through their agents both verbally and through materials provided to Plaintiff including misstatements as to the accessibility of his investment, its purpose, and return thereon, as follows:

    I. Defendants, and their agents, falsely represented and warranted that Plaintiff would have continued access to his investments via OLINT'S online portal, which would allow Plaintiff to monitor, adjust, and withdrawal his investments immediately;

    II. Defendants, and their agents, falsely represented and warranted that Plaintiff's investment would be used for foreign currency exchange trading. Upon information and belief, Defendant OLINT'S principals, including Defendant SMITH, have absconded with Plaintiff's funds and/or transferred them into affiliated entities or to affiliated parties, including Defendant HALLMARK, among others, for personal gain and/or with the intent to hinder, delay, or defraud Plaintiff's efforts to recover his funds; and

    III. Defendants, and their agents, falsely represented and warranted that Plaintiff would receive a significant return on his investment. However, Defendant OLINT, never intended to return Plaintiff's funds and has created an elaborate suspension of operations to avoid same and delay/escape suspicion of their actions.

    b. causing Plaintiff to enter into an agreement and requiring Plaintiff to provide Defendants with large sums of money to invest in OLINT and HALLMARK;

    c. beginning in the beginning of 2008, denying Plaintiff access to his funds and/or accounts and records through the actions of Defendants, and/or their principals or agents;

    d. through the actions of Defendants, and/or their principals or agents, misrepresenting to Plaintiff the status of OLINT and/or his investments in same to prevent his from discovering the fraud; and

    e. acting in concert with one another to continue the concealment of their fraudulent conduct.

82. Defendants TCII and MISICK were aware [or became aware] of OLINT'S, SMITH'S, and/or HALLMARK'S activities and business practices and did nothing to discourage investors from investing in the scheme. In fact, they continued to encourage investment in same.

83. Defendants MASTERCARD did nothing to remove their affiliation with HALLMARK, and in fact still maintain and affiliation with HALLMARK even in light of their dealings with OLINT and SMITH.

84. Plaintiff reasonably relied on the misrepresentations described above, which induced Plaintiff to "invest" in OLINT and HALLMARK.

85. As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, injuries and damages.

86. Plaintiff has retained undersigned counsel and is obligated to pay his attorney a reasonable fee.

**WHEREFORE,** Plaintiff, respectfully requests this Court enter judgment in his favor and against Defendants, awarding Plaintiff damages, together with interest, costs and such further relief as this Court deems necessary, just and proper.

## COUNT V

### FRAUDULENT MISREPRESENTATION

87. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

88. This is a cause of action for fraud against Defendants.

89. Defendants OLINT, SMITH, TROWBRIDGE, and HALLMARK knowingly made misrepresentations of material fact that induced Plaintiff to remit funds to HALLMARK and OLINT for Defendant's financial gain. These misrepresentations include, but are not limited to:

> a. Making misrepresentations through their agents both verbally and through materials provided to Plaintiff including misstatements as to the accessibility of his investment, its purpose, and return thereon, as follows:

> I. Defendants, and their agents, falsely represented and warranted that Plaintiff would have continued access to his investments via OLINT'S online portal, which would allow Plaintiff to monitor, adjust, and withdrawal his investments immediately;

> II. Defendants, and their agents, falsely represented and warranted that Plaintiff's investment would be used for foreign currency exchange trading. Upon information and belief, Defendant OLINT'S principals, including Defendant SMITH, have absconded with Plaintiff's funds and/or transferred them into affiliated entities or to affiliated parties, including Defendants HALLMARK, among others, for personal gain and/or with the intent to hinder, delay, or defraud Plaintiff's efforts to recover his funds; and

> III. Defendants, and their agents, falsely represented and warranted that Plaintiff would receive a significant return on his investment. However, Defendant OLINT, never intended to return Plaintiff's funds and has created an elaborate suspension of operations to avoid same and delay/escape suspicion of their actions.

b. causing Plaintiff to enter into an agreement and requiring Plaintiff to provide Defendants with large sums of money to invest in OLINT;

c. beginning in the beginning of 2008, denying Plaintiff access to his funds and/or accounts and records through the actions of Defendants, and/or their principals or agents;

d. through the actions of Defendants, and/or their principals or agents, misrepresenting to Plaintiff the status of OLINT and/or his investments in same to prevent him from discovering the fraud; and

e. acting in concert with one another to continue the concealment of their fraudulent conduct.

90. Plaintiff justifiably relied upon Defendant's false statements and misrepresentations, as Plaintiff and Defendants OLINT and HALLMARK entered into the agreement described above, each performed under its terms until Summer of 2008, and Defendants did not provide any objective indication of an intent to defraud Plaintiff throughout the parties' discussions and negotiations.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment in his favor and against Defendants, awarding Plaintiff damages, together with interest, costs and such further relief as this Court deems necessary, just and proper.

## COUNT VI

## BREACH OF CONTRACT

91. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

92. This is a breach of contract action against Defendants OLINT, HALLMARK, SMITH, and TROWBRIDGE.

93. Defendants OLINT and HALLMARK, and their principals and agents, provided Plaintiff with terms that would govern his account, including the assurance that Plaintiff could withdrawal any or all of his money at any time. These terms represent a contract with Plaintiff. Additionally representations were made to Plaintiff orally by principals or agents of OLINT and HALLMARK that also represent a contract with Plaintiff.

94. After these contracts were finalized, Plaintiff invested a substantial sum of money with OLINT. Pursuant to the contracts, Plaintiff was to have continuous access to his account and significant returns on his investment.

95. According to the informational materials and representations of OLINT, OLINT was to use Plaintiff's funds for foreign currency exchange trading through various trading platforms. All of the relevant account information was to be accessible through OLINT'S interactive website, including immediate access by Plaintiff for deposits, withdrawals, and the general monitoring of the account.

96. Plaintiff has repeatedly made written and oral requests to Defendants, providing Defendants with sufficient notice, to withdrawal funds from his account with OLINT.

97. Despite such demands, Defendants breached the Agreement by failing to return the requested principle and profits, totaling $2.4 million, owed to Plaintiff.

98. Defendant's breach has caused, and will continue to cause, Plaintiff injuries and damages.

**WHEREFORE,** Plaintiff respectfully requests this Court enter judgment against Defendants awarding Plaintiff damages and such further relief as this Court deems necessary, just and proper.

## COUNT VII

## UNJUST ENRICHMENT

99. Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 49 as though fully set forth herein.
100. This is an action for unjust enrichment against all Defendants.
101. Plaintiff has conferred upon Defendants a substantial benefit in the form of monies intended to be invested in foreign currency exchange trading to be conducted by OLINT, in an amount in excess of $2 million.
102. Defendants have failed to return the monies to Plaintiff and have failed to perform their obligations as promised to him, despite the fact that OLINT represented the fact that Plaintiff would have access to and receive substantial profits from keeping the money in his account at OLINT.
103. Defendants MASTERCARD have been unjustly enriched as a third-party beneficiary to their relationship with HALLMARK.
104. Defendants TCII and MISICK have been unjustly enriched as a third-party beneficiary to their encouraging of investment in HALLMARK and OLINT.
105. It is inequitable for Defendants to retain the monies.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter judgment for the Plaintiff against Defendants, awarding Plaintiff damages, and such further relief as this Court deems necessary, just and proper.

## COUNT VIII

## ACCOUNTING

106. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.
107. Plaintiff entered into the Agreement described above wherein Defendants OLINT and SMITH acted as investment manager and was entrusted with Plaintiff's funds to trade in foreign currency exchange with the funds he remitted to OLINT and HALLMARK.
108. Defendant HALLMARK, SMITH and OLINT failed to honor Plaintiff's withdrawal requests for the return of his funds and remittance of profits thereon.
109. Through misrepresentation, deceit, abuse of a confidential relationship, conversion and unjust enrichment, Defendants have absconded with substantial funds belonging to Plaintiff.
110. Plaintiff is entitled to an accounting of all actions taken and property transferred pursuant to his Agreement.

**WHEREFORE,** Plaintiff respectfully requests this Court enter an order requiring Defendants to account for all actions taken and property transferred pursuant to his Agreement, awarding Plaintiff his attorney's fees and costs, and with such relief as this Court deems necessary, just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury of all claims triable.

Respectfully submitted,

http://mail.google.com/mail/?ui=2&ik=591d46a6cd&view=att&th=12055966e565ce88&attid=0.1&disp=vah&realattid=f_fswphmti0&zw    3/30/09 12:59 PM

David P. Rowe
Florida Bar No.: 373575
Law offices of David P. Rowe

110 E. Broward Blvd.
Suite 1700
Fort Lauderdale, FL 33301

(305)731-0019

Important Notice
From: **clubmembers@overseaslocket.com**
Sent: Fri 12/28/07 2:01 AM
To: christopherwalke@hotmail.com
Security scan upon download OneCare
📎Private_M...pdf (29.9 KB)
If you're having problems downloading attachments, please sign in again and select "Remember me on this computer".
Sign in again

**Thursday, December 27, 2007 9:01 PM**

Dear Club Member,

I trust you had a wonderful Christmas and that you are looking forward to a safe and prosperous 2008. I am sure that by now you are aware that our lawsuit for damages against the Financial Services Commission was initially unsuccessful. Due to this ruling, you may have concerns about our club and its future. In order to address these concerns let me remind you that Olint TCI of whom you are a member continues to operate legally within the Turks and Caicos jurisdiction. The legal battle is between Olint Corp. and the Jamaican Financial Services Commission.

In terms of the judgment delivered on December 24, 2007 we have already initiated an appeal to the Court of Appeal, resulting in a stay of execution on that particular judgment. This means, that members will continue to conduct their affairs as they are accustomed to.

Attached you will find a Club Member's Document. Please sign and return to the following email address, olinttci@gmail.com. At a later date, we will provide you with an address to send your original documents. This will complete all of our compliance obligations in Turks and Caicos Islands.

As usual I thank you sincerely for your trust, your loyalty, your support and your prayers. I look forward to a greater 2008 and I am very excited at the challenge ahead of me to strive to yield even greater returns in the coming year,

May God Bless You

A/C# __11011519__ /__11013376__

# PRIVATE CLUB MEMBER AGREEMENT

This Agreement is made the ___3rd___ day of ___JANUARY___ between Hallmark Bank & Trust Ltd., a bank incorporated in the Turks and Caicos Islands, situated at Tropicana Plaza, P.O. Box 656, Leeward Highway. Providenciales Turks and Caicos Islands hereinafter referred to as "the Company" and

___CHRISTOPHER    WALKER___ ___ of

___11524    CLAYMONT   CIRCLE   WINDERMERE  FL 34786___(residential address) hereinafter referred to as "the Customer".

Whereas:

The Company, as part of its business, places client funds in the currency exchange market through Olint TCI Corporation Ltd. for investment in leveraged foreign exchange transactions and manages a private club for those persons (the Customers) wishing to invest in leveraged foreign exchange transactions.

And whereas both the Company and the Customer are desirous of entering into a relationship which will be provided on the terms and conditions set forth:

And whereas both the company and the customer have HEREBY AGREED AND DECLARED AS FOLLOWS:

### 1.    DEFINITIONS AND INTERPRETATION

In this Agreement unless the context otherwise requires:

1.1    "Margin" shall mean any investment given to the Company at any time;

1.2    "Services" shall mean taking margin leveraged speculative currency positions;

1.3    "Club Member" shall mean any individual or company that has applied to and been accepted to become a member of that group that has provided funds to the Company for investment in foreign exchange transactions;

1.4    "Investment Manager" shall mean Olint TCI Corporation Ltd., who has its registered office at Tropicana Plaza, Leeward Highway, Providenciales, Turks & Caicos Islands which said company invests Customer funds in leveraged foreign exchange transactions and reports out Customer holdings in the foreign exchange markets to Club Members;

1.4    Words expressed in any gender shall where the context so requires or permits include any other gender;

1.5    In this Agreement words importing persons shall include bodies corporate and partnerships and other incorporated bodies and vice versa;

1.6    In this Agreement words expressed in the singular shall where the context so requires or permits include the plural;

1

1.7 The headings and clauses in this Agreement are inserted for ease of reference only and shall not affect the construction of this agreement.

## 2. CONTRACTUAL RELATIONSHIP

2.1 In connection with becoming a Club Member, the Customer acknowledges that Customer has been advised and understands the following factors concerning the Services offered pursuant to this agreement;

2.2 The Services provided pursuant to this Agreement carry a high degree of risk. The customer will be entirely responsible for the risk associated with the provision of services.

2.3 All sums invested pursuant to this Agreement will be used as a margin for taking margined leveraged speculative currency positions via the Investment Manager. All gains on trades will be added to this Margin and all losses shall be subtracted by the Investment Manager. Further, losses may arise as a result of fluctuations in the exchange rates which will in turn affect currency prices.

2.4 Margins will be invested within 10 working days after acceptance of the Customer as a Club Member unless in the sole discretion of the Investment Manager market conditions are not favourable for investment in which case the Margin will be held by the company in an interest bearing account. Eighty percent of the margin is guaranteed by the Investment Manager. Margin leverage on trades will vary in a range of 10-1 to 50-1. Under normal market condition, trades will be executed at margin leverage levels of 20-1.

2.5 The Investment Manager reserves the right to change the margin leverage at any time.

2.6 Customers will not be accepted by the Company as Club Members until funds have been received by the Company AND required "Know your Client" and source of funds information has also been received and approved by the Company and the Investment Manager

2.7 The Investment Manager shall have full unfettered discretion as to how the Margin in invested subject only to a duty to act with reasonable commercial prudence having regard to the speculative nature of leveraged foreign exchange transactions. The Company shall have no duty to inquire into the exercise of the Investment Manager's discretion.

## 3. AUTHORISATION TO TRANSFER FUNDS

Except with the specific written permission of the Customer, the Company and the Investment Manager will not transfer funds from or among Customer's accounts.

## 4. WARRANTIES AND GUARANTEES

The Company and the Investment Manager make no express or implied warranties save and except for those contained in this agreement regarding the service provided by them. The Company, the Investment Manager and their representatives shall not be liable for any interruption, inaccuracy, error or omission, regardless of cause in the service provided. NO WARRANTY, GUARANTEE OR REPRESENTATIONS HAVE BEEN MADE OR ARE MADE WITH RESPECT TO RATES OF RETURN AND THE CUSTOMER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT UNDERSTANDS THE HIGH RISK NATURE OF FOREIGN EXCHANGE TRADING AND THAT HE COULD LOSE A SUBSTANTIAL PORTION OF HIS INVESTMENT.

2

5. **COMMUNICATION**

Statements will be provided by the Investment Manager on a monthly basis regarding the customers account to an address to be provided by the Customer. The Customer is responsible for providing the Investment Manager with updated contact information at all times. All communications will be sent by the Investment Manager using electronic mail, facsimile or otherwise against receipted delivery and will be deemed to be received on the business day next following the date of transmission. The Customer agrees that neither the Company nor the Investment Manager will be responsible for any delays in transmission. All notices to the Company shall be sent to the address of the Investment Manager or to such other address as advised to the Customer from time to time.

6. **LIABILITY**

The Customer agrees to remise release and forever waive all liabilities of the Company or the Investment Manager which may arise as a result of this agreement save and except for any actions or inactions of the Company or Investment Manager which amount to fraud with intent to deceive or gross negligence.

7. **TERMINATION**

This Agreement can be terminated at any time by either of the parties. Ten working days notice however is required to encash margins.

8. **FORCE MAJURE**

Neither party shall be liable for any failure in the performance of any of its obligations under this agreement caused by factors outside its control.

9. **VARIATION**

No variation or amendment of this agreement or oral promise or commitment related to it shall be valid unless committed to writing and signed by or on behalf of both parties.

10. **LAW**

This Agreement shall be governed by the Laws of the Turks and Caicos Islands and the Customer consents to the exclusive jurisdiction of the Supreme Court of the Turks and Caicos Islands on all matters regarding it except to the extent that the Company invokes the jurisdiction of the courts of any other country.

3

The Customer represents that he has read and understands his obligations under this Agreement and agrees and acknowledges that the Agreement will control the customer's relationship with the Company and the Investment Manager.

Signed for and on behalf of

THE CUSTOMER

Witnessed by:

CHRISTOPHER WALKER
Print Name

SCOTT BOONE
Print Name

OLINT TCI CORPORATION LTD.

By

Smith

DIRECTOR

HALLMARK BANK & TRUST LTD.

By

CEO

4

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS
Christopher Walker, MD

**DEFENDANTS** HALLMARK BANK & TRUST LTD.; BRIAN TROWBRIDGE; MASTERCARD WORLDWIDE; MASTERCARD INTERNATIONAL, LLC; DAVID SMITH; OVERSEAS LOCKET INTERNATIONAL CORP; THE TURKS AND CAICOS ISLANDS INVESTMENT AGENCY; MICHAEL MISICK

**(b)** County of Residence of First Listed Plaintiff  Broward County, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Turks & Caicos Islands
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
David P. Rowe, Esq.; Law Offices of David P. Rowe; 110 E Broward Blvd, Suite 1700; Fort Lauderdale, FL 33301; 305.731.0019

Attorneys (If Known)
For MasterCard Int'l, LLC: Michael Lamont; Fowler White Boggs P.A.; 1200 E Las Olas Blvd, Ste. 400; Ft. Lauderdale, FL 33301

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

O'09CV60746-Cohn-BSS

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☑ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S)
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO      b) Related Cases ☐ YES ☑ NO
JUDGE                              DOCKET NUMBER

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Removal based on diversity 28 U.S.C. 1332(a), 1441(a), 1446; state common law claims for breach of contract, fraudulent conveyance, fraudulent misrepresentation, conspiracy, unjust enrichment, & accounting
LENGTH OF TRIAL via  7  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 2,400,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  5|20|09

FOR OFFICE USE ONLY
AMOUNT 350.00   RECEIPT # 546331   IFP